**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| ASHLEE HENDERSON and | ) |
| RUBY HENDERSON a married couple, and | ) |
| L.W.C.H. by his parent and next friend Ruby | ) |
| Henderson, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 1:15-cv-00220-TWP-MJD |
| | ) |
| DR. JEROME ADAMS in his official capacity | ) |
| as Indiana State Health Commissioner, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

The disputes in this matter surround complex legal issues following the United States Supreme Court's mandate that legally married same-sex couples in the United States are entitled to the same privileges and benefits as legally married heterosexual couples. The Plaintiffs in this case are female, same-sex married couples and their children whose birth certificates list only the birth mother as a parent with no second parent.  The Plaintiffs seek injunctive relief to list both the birth mother and her same-sex spouse on their children's birth certificates and to have their children recognized as children born in wedlock. They also seek declaratory judgment that Indiana Code §§ 31-9-2-15, 31-9-2-16, and 31-14-7-1 violate the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment to the United States Constitution.  The Defendants assert that Plaintiffs' claims must fail because the challenged statutes impinge no fundamental rights and in any event are narrowly tailored to vindicate compelling state interests.

Before the Court are cross-motions for summary judgment filed pursuant to Federal Rule of Civil Procedure 56. Plaintiffs Ashlee Henderson, Ruby Henderson, L.W.C.H., Nicole Singley,

Jennifer Singley, H.S., Elizabeth Bush-Sawyer, Tonya Bush-Sawyer, I.J.B-S, Cathy Bannick, Lyndsey Bannick, H.N.B., Nikkole McKinley-Barrett, Donnica Barrett, G.R.M.B., Calle Janson, Sarah Janson, F.G.J., Jackie Phillips-Stackman, Lisa Phillips-Stackman, L.J.P-S, Noell Allen, and Crystal Allen (collectively "the Plaintiffs") filed their motion on December 4, 2015 (Filing No. 77). Shortly thereafter, Tippecanoe County Defendants (Filing No. 82), and Marion County Defendants, Bartholomew County Defendants, Vigo County Defendants, and the State Defendant[1] (Filing No. 84), filed cross-motions for summary judgment.

The parties request summary judgment on the Plaintiffs' claims for injunctive relief and declaratory judgment. For the following reasons, the Court **GRANTS** the Plaintiffs' Motion for Summary Judgment against the State Defendant, **GRANTS** the Tippecanoe County Defendants' Motion for Summary Judgment, and **DENIES** the State Defendant's Motion for Summary Judgment.

---

[1] The State and County Defendants are (1) Dr. Jerome M. Adams in his official capacity as Commissioner of the Indiana State Department of Health ("State Defendant"); (2) Dr. Virginia A. Caine in her official capacity as Director and Health Officer of the Marion County Health Department; Darren Klingler in his official capacity as Administrator of Vital Records of the Marion County Health Department; and Dr. James D. Miner, Gregory S. Fehrbach, Lacy M. Johnson, Charles S. Eberhardt, II, Deborah J. Daniels, Dr. David F. Canal, and Joyce Q. Rogers in their official capacities as Trustees of Health & Hospital Corporation of Marion County (collectively "Marion County Defendants"); (3) Dr. Jeremy P. Adler in his official capacity as Health Officer for the Tippecanoe County Health Department; Craig Rich in his official capacity as Administrator of the Tippecanoe County Health Department; Glenda Robinette in her official capacity as Registrar of Vital Records of the Tippecanoe County Health Department; and Pam Aaltonen, Dr. Thomas C. Padgett, Thometra Foster, Karen Combs, Kate Nail, Dr. John Thomas, and Dr. Hsin-Yi Weng in their official capacities as members of the Tippecanoe County Board of Health (collectively "Tippecanoe County Defendants"); (4) Dr. Brian Niedbalski in his official capacity as Health Officer of the Bartholomew County Health Department; Collis Mayfield in his official capacity as Director of the Bartholomew County Health Department; Beth Lewis in her official capacity as Registrar of Vital Records of the Bartholomew County Health Department; and Dennis Stark, Dr. Michael Chadwick, Dr. Susan Sawin-Johnson, Michael Meyer, Dr. Charles Hatcher, Dr. Brooke F. Case, Cindy Boll, and Jim Reed in their official capacities as members of the Bartholomew County Board of Health (collectively "Bartholomew County Defendants"); and (5) Dr. Darren Brucken in his official capacity as Health Officer of the Vigo County Health Department; Joni Wise in her official capacity as Administrator of the Vigo County Health Department; Terri Manning in his official capacity as Supervisor of Vital Statistics of the Vigo County Health Department; and Jeffery DePasse, Dora Abel, Dr. Irving Haber, Brian Garcia, Michael Eldred, Dr. James Turner, and Dr. Robert Burkle in their official capacities as members of the Vigo County Board of Health (collectively "Vigo County Defendants").

# I.   BACKGROUND

The parties essentially do not dispute the key background facts. Where there is a disputed fact, the Court has construed all inferences in the light most favorable to the non-moving party.

## A.   The Plaintiffs

Plaintiffs Ashlee and Ruby Henderson were lawfully married in Tippecanoe County, Indiana on November 11, 2014. Prior to their marriage, the couple had been together for over eight years and decided they wanted a child in their family. After the couple's artificial conception of L.W.C.H., the Indiana statute prohibiting same-sex marriage was declared unconstitutional, so Ashlee and Ruby married.

During the week of November 2, 2014, the couple contacted IU Health Arnett Hospital, where L.W.C.H. would be born, to ask if both spouses would be listed on the birth certificate as parents of L.W.C.H. after the couple was married. The couple was told to contact the Tippecanoe County Health Department. On the same day, the couple contacted the Tippecanoe County Health Department and were told that Ashlee would not be listed on the birth certificate as a parent of L.W.C.H. without a court order.

L.W.C.H. was born on December 22, 2014, at IU Health Arnett Hospital in Lafayette, Indiana. After the child's birth, Ruby was asked to complete the Indiana Birth Worksheet. The couple revised each question asking for information regarding the father of the child by replacing the term "father" with the term "Mother #2." All information provided regarding "Mother #2" related to Ashlee, the legal spouse of Ruby who was the birth mother. On January 22, 2015, the Tippecanoe County Health Department issued L.W.C.H.'s birth certificate, which noted only Ruby Henderson as a parent.

Plaintiffs Elizabeth and Tonya Bush-Sawyer were lawfully married in Washington, D.C. in 2010.  They artificially conceived I.J.B-S, who was born on January 10, 2014.  When I.J.B-S was born, Elizabeth, the birth mother, completed the Indiana Birth Worksheet, providing Tonya's information for all the questions that asked about the father of the child.  After returning home from the hospital with I.J.B-S, the couple received a birth confirmation letter that listed both women as the parents of I.J.B-S and that listed the child's name as a hyphenated version of both their last names.  In March 2014, Elizabeth went to the Marion County Health Department to obtain I.J.B-S's birth certificate.  At the health department, she was told there was something wrong, and she would need to return the next day.  When she returned, Elizabeth was presented with a birth certificate that listed her as the only parent of I.J.B-S, and the child's name had been changed from I.J.B-S to I.J.B.  Shortly thereafter, Elizabeth and Tonya received a new social security card for I.J.B-S, which listed the name as I.J.B.

Tonya is seeking a stepparent adoption. She is required to undergo fingerprinting and a criminal background check in addition to submitting her driving record, her financial profile, and the veterinary records for any pet living in the home. A home study is being conducted, which examines the relationship history of Elizabeth and Tonya, requires them to write an autobiography and to discuss their parenting philosophy, and requires them to open their home for inspection. The cost for their stepparent adoption is approximately $4,200.00 (Filing No. 79-1 at 3–4).

Nicole and Jennifer Singley were lawfully married in January 2014.  The couple artificially conceived a baby, and on March 29, 2015, H.S. was delivered by Jennifer.  Nicole was not listed as a parent on the birth certificate of H.S.  Nicole is an active duty member of the U.S. Army and is entitled to all the benefits available to members of the Army, including health insurance.  Currently, her family is covered by military health insurance.  H.S. is eligible for healthcare

coverage under the military insurance program because H.S. is considered to be the stepchild of Nicole. If Jennifer should predecease H.S., then H.S. will no longer be eligible for Nicole's health insurance and other military benefits (such as in-state tuition) because Nicole no longer will be considered his stepparent.

Lyndsey and Cathy Bannick were lawfully married in Iowa in October 2013. They decided to have a child, and Lyndsey was artificially inseminated. H.N.B. was born to the couple on May 8, 2015, in Bartholomew County, Indiana. Cathy's information was provided on the Indiana Birth Worksheet so that she could be listed as the second parent on H.N.B.'s birth certificate. However, Lyndsey was the only parent listed on the birth certificate.

Calle and Sarah Janson were lawfully married in Indianapolis on June 27, 2014. They decided to have a child, and through artificial conception, Calle became pregnant. F.G.J. was born to the couple on December 1, 2015; however, F.G.J.'s birth certificate does not list Sarah as a parent.

Nikkole McKinley-Barrett and Donnica Barrett were lawfully married on June 25, 2014, and they have been together for approximately twelve years. They decided to have a child together, and Donnica was artificially inseminated. G.R.M.B. was born to the couple on April 3, 2015, in Vigo County, Indiana. Nikkole's information was provided on the Indiana Birth Worksheet so that she could be listed as the second parent on G.R.M.B.'s birth certificate. However, Donnica was the only parent listed on the birth certificate.

Noell and Crystal Allen were lawfully married in New York City on November 22, 2013. They had already been together fourteen years. They have a daughter, E.A., who was conceived through artificial insemination and delivered by Noell. Crystal subsequently adopted E.A., and both Noell and Crystal are legal parents of E.A.

5

The couple decided that they wanted to add to their family, and Crystal also wanted the experience of giving birth. With the aid of intra-uterine insemination, Crystal became pregnant. Their twins, Ashton and Alivea Allen, were born prematurely on November 21, 2015, and died the same day. The following day, hospital staff informed the couple that Noell would not be listed on the twins' birth certificates. Noell was later informed by the Indiana State Department of Health ("ISDH") that the State was unwilling to add Noell to the birth certificates in the absence of a court order. Because the twins are deceased, Noell cannot adopt them to become their legal parent. While Noell is not listed as a parent on the birth certificates, she is listed as a parent on the twins' death certificates.

Jackie and Lisa Phillips-Stackman were lawfully married on October 5, 2015. Together, they decided to have a child with the assistance of in vitro fertilization. Jackie's egg was fertilized with sperm from a third-party donor and then implanted in Lisa. Lisa carried the baby and then delivered on October 21, 2015. While at the hospital, hospital staff completed the Indiana Birth Worksheet with the couple. It was explained that only Lisa could be listed as a parent on the birth certificate and that Jackie could not be listed as a parent without a court order even though Jackie was the biological parent. Although the couple was lawfully married at the time of their child's birth, Jackie and Lisa received a notice from the Marion County Health Department explaining how a parent could be added to the birth certificate of a child born out of wedlock.

Jackie is a detective with the Indianapolis Metropolitan Police Department, and her health insurance provides coverage for L.J.P-S, who is considered Jackie's stepchild. Unfortunately, L.J.P-S suffers from serious medical problems. If Lisa should predecease L.J.P-S, because Jackie is not legally recognized as a parent of L.J.P-S, L.J.P-S would no longer qualify for health care under Jackie's insurance.

6

Each of the Plaintiff female, same-sex married couples agreed to have children together and conceived through various forms of assisted reproduction, using sperm from third-party donors.  In each instance, the birth mother was listed on the child's birth certificate, but the same-sex spouse was not listed on the birth certificate as a parent.  The non-birth mothers seek to be listed on their child's birth certificate and to be recognized as a parent.  Each of the children were born during the couples' marriage, and the couples want their children to be recognized as being born in wedlock.  The married couples have been informed that the non-birth mother may become a legally recognized parent only if she goes through the legal adoption process to adopt her child.

**B.**      **Indiana Birth Certificates**

When children are born in Indiana, the procedure for creating and processing birth certificates for these newborns begins with the hospital staff working with the birth mother to complete the State of Indiana's "Certificate of Live Birth Worksheet."  The Indiana Birth Worksheet was created by the State of Indiana as part of the Indiana Birth Registration System.  Staff at the hospital upload the information provided on the Indiana Birth Worksheet to a State database.  The county health department then receives notification that birth information has been added to the database.  A notification letter to the birth mother is generated in a form provided by the State, which indicates that information has been received by the county health department and requests that the mother notify the county health department if there is an error with respect to the child's identifying information.  The notification letter also informs the mother that a certified copy of the record of birth is available from the local health office.  If a person wants to obtain a birth certificate, the individual is required to complete an "Application for a Certified Birth Certificate."  The birth certificate application requires the individual to provide information required by the State of Indiana.  Upon successful completion of the application, the county health

7

department will generate a birth certificate based on the information available to it through the State's database.

When the hospital staff and the birth mother complete the Indiana Birth Worksheet, the responses to questions 37 through 52 determine whether and what information concerning the identity of the child's father will appear on the birth certificate.  Question 37 asks, "are you married to the father of your child."  If the answer is "no," the birth mother is asked to go to question 38, and if the answer is "yes," the birth mother proceeds to questions 39 through 52. Question 38 asks if a paternity affidavit has been completed for the child.  If the answer is "yes," the birth mother proceeds to questions 39 through 52.  If the answer is "no," the birth mother is asked to skip questions 39 through 52 and go to question 53.  Questions 39 through 52 pertain to information about the father.  Thus, if the birth mother indicates that she is not married to the father of the child and that a paternity affidavit has not been completed, there would be no information about the father provided on the Indiana Birth Worksheet and, consequently, no information about the father would be available when the birth certificate is generated.

Question 11 of the Indiana Birth Worksheet asks, "What will be your BABY'S legal name (as it should appear on the birth certificate)?"  Regardless of how the birth mother answers question 11, Indiana law requires that a "child born out of wedlock" be given the mother's surname unless a paternity affidavit dictates to the contrary. Ind. Code § 16-37-2-13.

ISDH is statutorily charged with providing a system of vital statistics in Indiana.  Among other things, ISDH prescribes information to be contained in each kind of application or certificate of vital statistics, administers the putative father registry, and establishes the Indiana Birth Registration System for recording in an electronic format all live births in Indiana.  Records of

births submitted to the Indiana Birth Registration System are submitted by physicians, persons in attendance at birth, or local health departments using the electronic system created by ISDH.

Within five days of the birth, a certificate of birth or paternity affidavit must be filed using the Indiana Birth Registration System.  The local health officer is required to make a permanent birth record of information from the certificate of birth.  The record includes the child's name, sex, date of birth, place of birth, name of parents, birthplace of parents, date of filing the certificate of birth, the person in attendance at the birth, and the location of the birth.  ISDH is charged with making corrections or additions to the birth certificate.  Such additions or corrections can be made by ISDH upon receipt of adequate documentation, including the results of a DNA test or a paternity affidavit.

### C.    The Challenged Statutes

The Plaintiffs challenge the constitutionality of Indiana Code §§ 31-9-2-15, 31-9-2-16, and 31-14-7-1 under the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment.  Indiana Code §§ 31-9-2-15 and 31-9-2-16 define the terms "child born in wedlock" and "child born out of wedlock."  Indiana Code § 31-14-7-1 establishes a presumption of paternity in a birth mother's husband.

Indiana Code § 31-9-2-15 states:

> "Child born in wedlock", for purposes of IC 31-19-9, means a child born to:
>   (1) a woman; and
>   (2) a man who is presumed to be the child's father under IC 31-14-7-1(1) or IC 31-14-7-1(2) unless the presumption is rebutted.

Indiana Code § 31-9-2-16 states:

> "Child born out of wedlock", for purposes of IC 31-19-3, IC 31-19-4-4, and IC 31-19-9, means a child who is born to:
>   (1) a woman; and
>   (2) a man who is not presumed to be the child's father under IC 31-14-7-1(1) or IC 31-14-7-1(2).

9

Indiana Code § 31-14-7-1 states:

> A man is presumed to be a child's biological father if:
> (1) the:
>   (A) man and the child's biological mother are or have been married to each other; and
>   (B) child is born during the marriage or not later than three hundred (300) days after the marriage is terminated by death, annulment, or dissolution;
> (2) the:
>   (A) man and the child's biological mother attempted to marry each other by a marriage solemnized in apparent compliance with the law, even though the marriage:
>     (i) is void under IC 31-11-8-2, IC 31-11-8-3, IC 31-11-8-4, or IC 31-11-8-6; or
>     (ii) is voidable under IC 31-11-9; and
>   (B) child is born during the attempted marriage or not later than three hundred (300) days after the attempted marriage is terminated by death, annulment, or dissolution; or
> (3) the man undergoes a genetic test that indicates with at least a ninety-nine percent (99%) probability that the man is the child's biological father.

The Plaintiffs assert that these statutes violate the Fourteenth Amendment's guarantees of equal protection and due process because they create a presumption of parenthood for men married to birth mothers but not for women married to birth mothers and because they stigmatize children born to same-sex married couples as children born out of wedlock.

On February 13, 2015, the Plaintiffs filed their Complaint, asking the Court for declaratory judgment that Indiana Code §§ 31-9-2-15, 31-9-2-16, and 31-14-7-1 are unconstitutional, for injunctive relief to list both the birth mother and her same-sex spouse on their children's birth certificates, and to recognize their children as being born in wedlock. The parties then filed cross-motions for summary judgment on the Plaintiffs' claims for injunctive relief and declaratory judgment. On April 8, 2016, the parties presented oral argument to the Court on the cross-motions for summary judgment.

## II.   SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted).  "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

These same standards apply when each party files a motion for summary judgment.  The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact.  *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003).  The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial.  *Id.* at 648.  "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made."  *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

## III.   DISCUSSION

The Plaintiffs move for summary judgment, asking the Court for a declaratory judgment that Indiana Code §§ 31-9-2-15, 31-9-2-16, and 31-14-7-1 violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment by not recognizing their children as being born in wedlock and by not granting a presumption of parenthood to the non-birth mother same-sex spouse.  The Plaintiffs also request injunctive relief to list both same-sex spouses on their children's birth certificates and to recognize their children as being born in wedlock.  The Defendants argue that declaratory judgment and injunctive relief are inappropriate because the challenged statutes do not provide unequal treatment and are narrowly tailored to serve a compelling state interest.  The Tippecanoe County Defendants further assert that Plaintiffs lack standing to sue the Tippecanoe County Defendants.  The Court will address each argument, beginning with the standing issue.

A.     __The Plaintiffs' Standing to Sue County Defendants__

The Tippecanoe County Defendants argue that Plaintiffs lack standing to sue them because the Plaintiffs' alleged injuries are not fairly traceable to the challenged action of the Tippecanoe County Defendants, and their alleged injuries will not be redressed by a favorable decision against the Tippecanoe County Defendants. These arguments apply equally to the Marion County Defendants, Bartholomew County Defendants, and Vigo County Defendants.

In order to establish standing, a plaintiff must show an injury in fact, a causal connection between the injury and the conduct complained of, and it must be likely (not just speculative) that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The injury has to be fairly traceable to the challenged action of the defendant. *Id.* at 560. Citing Seventh Circuit case law, the Tippecanoe County Defendants explain that the suit should be brought against entities that have legal responsibility for the flaws Plaintiffs perceive in the system and from whom they ask something which would conceivably help their cause. *See Hearne v. Board of Education*, 185 F.3d 770, 777 (7th Cir. 1999) (plaintiffs' inability to show that the defendant bears any legal responsibility for the flaws they perceive in the system bars the plaintiffs' action).

The Tippecanoe County Defendants explain that their involvement with the Plaintiffs is purely ministerial, and the Plaintiffs' true conflict is with the laws of the State of Indiana and the State's administration of its birth records system. The Tippecanoe County Health Department produces birth certificates that are consistent with the information provided to it through the State's birth records database. ISDH prescribes the information that is required for birth certificates and for applications for birth certificates. Local hospitals collect the State prescribed information from birth mothers and submit that information to the State's database. The Tippecanoe County Health

13

Department then produces birth certificates based on that State prescribed information which is contained in the State's database. The Tippecanoe County Defendants have no authority to deviate from this procedure, to change the information in the State's database, to use different information to create birth certificates, or to place a Plaintiff non-birth mother on the birth certificate. The right to be listed on a birth certificate and the process of being listed are dictated by the State of Indiana, not by the county health departments. Therefore, there is no causal connection between the injury claimed by the Plaintiffs and the conduct of the Tippecanoe County Defendants. Additionally, the Tippecanoe County Defendants' role in the process does not in any way define children as being born in or out of wedlock under the Indiana statutes. Thus, the Tippecanoe County Defendants argue, the Plaintiffs' injuries cannot be fairly traceable to the challenged action of the Tippecanoe County Defendants. Consequently, the Plaintiffs lack standing to bring this action against the Tippecanoe County Defendants.

The Tippecanoe County Defendants also argue that the Plaintiffs' alleged injuries will not be redressed by a favorable decision against them because the contents of birth certificates are not discretionary for the county health departments; birth certificate information is dictated by ISDH. If the Tippecanoe County Defendants were to attempt to go outside the State's regulatory system for producing birth certificates, their actions would be *ultra vires* and would result in invalid birth certificates. They assert that,

> [A] mandate from this Court requiring TCHD to add Mrs. Henderson to the birth certificate -- in the absence of an order altering the State's regulatory scheme -- would be outside TCHD's authority and, while TCHD would comply with the order of this court, a certificate issued by TCHD outside of the State's regulatory scheme would be of questionable value. The value in a birth certificate is founded upon the regulatory system underlying the certificate. Alternately, if this Court issued a mandate altering the State's regulatory scheme for issuing birth certificates, TCHD would be bound to comply with the new state system even in the absence of an order directed at TCHD.

14

(Filing No. 83 at 17.)  The Tippecanoe County Defendants assert that, for this additional reason, the Plaintiffs lack standing to bring this action against them.

In response to these arguments regarding a lack of standing, the Plaintiffs assert that their injuries are traceable to the County Defendants' actions because it is the County Defendants that actually issue the birth certificates that do not list both same-sex spouses as parents on the birth certificates.  The Plaintiffs also assert that a favorable decision against the County Defendants will redress the Plaintiffs' injuries because the Tippecanoe County Defendants acknowledge that they would comply with an order from this Court mandating the issuance of birth certificates listing both spouses as parents.

The Court is convinced by the evidence and argument that the County Defendants do not have authority or discretion to deviate from the State's regulatory system for creating and issuing birth certificates in the State of Indiana.  The State dictates what information is collected, the method by which information is collected, how information is stored, and how information can be used to generate birth certificates.  The State also governs how information on a birth certificate may be modified.  The real injury to the Plaintiffs stems from the State's regulatory framework and ISDH's control over the State's vital statistics system.  Injury is not fairly traceable to the County Defendants.  Additionally, the Plaintiffs ignore the Tippecanoe County Defendants' clear qualifier that it would comply with an order from the Court, but adhering to such an order would not redress the injuries suffered because the actions would be *ultra vires*, and the resulting birth certificates would be invalid and of questionable value.

Because the Plaintiffs' injuries are not fairly traceable to the challenged action of the County Defendants, and their injuries will not be redressed by a favorable decision against the

County Defendants, the Plaintiffs lack standing to sue the Tippecanoe County Defendants, Marion County Defendants, Bartholomew County Defendants, and Vigo County Defendants.

If a plaintiff lacks standing, the district court has no subject matter jurisdiction. *See Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002) (internal citation omitted). If the court lacks jurisdiction over the subject matter, its only proper course is to note the absence of jurisdiction and dismiss the case on that ground. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998). "A dismissal for lack of federal jurisdiction is without prejudice." *Bovee v. Broom*, 732 F.3d 743 (7th Cir. 2013); *see also El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 751 (7th Cir. 2013) ("Dismissals because of absence of federal jurisdiction ordinarily are without prejudice . . . 'because . . . once a court determines it lacks jurisdiction over a claim, it perforce lacks jurisdiction to make any determination of the merits of the underlying claim.'" (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1217 (10th Cir. 2006)).

For this reason, the Court **GRANTS** the Tippecanoe County Defendants' Motion for Summary Judgment, and the claims against each of the County Defendants are **dismissed for lack of subject matter jurisdiction.**

## B.   <u>Equal Protection</u>

The Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." This Amendment provides protection against discrimination on the basis of gender or sexual orientation. *See Baskin v. Bogan*, 766 F.3d 648 (7th Cir. 2014) (sexual orientation discrimination); *Hayden v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 576–82 (7th Cir. 2014) (gender discrimination).

The Plaintiffs assert that Indiana's refusal to grant the status of parenthood to female spouses of artificially-inseminated birth mothers while granting the status of parenthood to male

spouses of artificially-inseminated birth mothers violates the Equal Protection Clause. The Plaintiffs explain that Indiana is required to recognize same-sex marriage as determined by *Baskin*, 766 F.3d 648. And the benefits conferred upon opposite-sex married couples must be equally conferred upon same-sex married couples. *Baskin v. Bogan*, 12 F. Supp. 3d 1144, 1165 (S.D. Ind. 2014). As the United States Supreme Court recently explained,

> Indeed, while the States are in general free to vary the benefits they confer on all married couples, they have throughout our history made marriage the basis for an expanding list of governmental rights, benefits, and responsibilities. These aspects of marital status include: adoption rights; . . . birth and death certificates; . . . and child custody, support, and visitation rules.

*Obergefell v. Hodges*, 135 S. Ct. 2584, 2601 (U.S. 2015).

Based on these recent developments in constitutional jurisprudence, the Plaintiffs ask the Court for declaratory and injunctive relief, seeking to enjoin the Defendants from refusing to issue birth certificates listing the non-birth mother same-sex spouses as parents on their respective children's birth certificates "and to otherwise accord them all rights accorded to parents identified on a birth certificate." They also ask that the Defendants be enjoined from declining to recognize their children as being born in wedlock.

To make their case, the Plaintiffs provide the example of a man and a woman who are married and who become pregnant through the aid of a third-party sperm donor. The married woman then gives birth to a child who is not biologically related to her husband. Even though the mother, the husband, the doctor, and possibly the hospital staff know that the man is not the biological father of the child, the State of Indiana will presume parenthood of the child in the husband. This same presumption of parenthood is not afforded to the female, same-sex spouse of a birth mother who also becomes pregnant through the aid of a third-party sperm donor. The Plaintiffs assert that the State Defendant's refusal to apply the same presumption of parenthood to

the non-birth mother same-sex spouse as would apply to the husband of a birth mother who conceives by artificial insemination violates the Equal Protection Clause of the Fourteenth Amendment.

With respect to Indiana Code §§ 31-9-2-15 and -16, the Plaintiffs contend that these statutes are unconstitutional on their face and as applied to the Plaintiffs because Indiana law says that a child born to a husband and wife is a child born in wedlock, but because these birth mothers are married to women, their children are labeled as children born out of wedlock, are not allowed to carry their second parent's surname, and suffer the stigma of illegitimacy. The State Defendant responds that the purpose of these statutes is limited only for the purpose of determining who must be notified and given an opportunity as a biological father to consent to an adoption procedure; therefore, "[t]hese statutes do not disfavor anyone based on illegitimacy." (Filing No. 85 at 13.)

The Plaintiffs contend, and the Court agrees, that the "Parenthood Statutes" (Indiana Code §§ 31-9-2-15, 31-9-2-16, and 31-14-7-1) are reviewed under heightened "intermediate" scrutiny because of the gender and sexual orientation classifications at issue. *See Hayden*, 743 F.3d at 577 ("Gender is a quasi-suspect class that triggers intermediate scrutiny in the equal protection context; the justification for a gender-based classification thus must be exceedingly persuasive."); *Baskin*, 766 F.3d at 671 (statutes that discriminate on the basis of sexual orientation are subject to heightened intermediate scrutiny). A statute survives intermediate scrutiny if it "serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Baskin*, 766 F.3d at 656.

The purposes and objectives of Indiana's Parenthood Statutes are codified at Indiana Code § 31-10-2-1, which declares,

It is the policy of this state and the purpose of this title to:
(1) recognize the importance of family and children in our society;

18

(2) recognize the responsibility of the state to enhance the viability of children and
family in our society;
(3) acknowledge the responsibility each person owes to the other;
(4) strengthen family life by assisting parents to fulfill their parental obligations….

Courts in Indiana have repeatedly focused on the State's interest in protecting the best interests of

the child when making determinations in the family law context. *See In re Adoption of K.S.P.*, 804

N.E.2d 1253, 1257 (Ind. Ct. App. 2004) (". . . the guiding principle of statutes governing the parent-

child relationship is the best interests of the child").

The Plaintiffs argue that the challenged Parenthood Statutes do not serve these

governmental objectives. It is undisputed that the State of Indiana wants to serve the best interests

of children and to protect, promote, and preserve families.  In light of the legal recognition of

same-sex marriage, the Plaintiffs argue that there is no governmental interest in denying the

presumption of parenthood to the same-sex spouse of a birth mother.  Instead, applying the

Parenthood Statutes undermines and discourages families that are required by the Supreme Court's

decision in *Obergefell* to be recognized and strengthened.

An example offered by the Plaintiffs of unequal treatment resulting from application of the

Parenthood Statutes is that the denial of a presumption of parenthood to same-sex spouses requires

them to go through the lengthy and costly adoption process to secure parental rights, which is not

required of similarly situated men married to birth mothers who conceive through artificial

insemination. Additionally, not permitting both same-sex spouses to be listed as parents on birth

certificates leaves children in a vulnerable position of having only one legal parent, which affects

many daily activities and choices available to children and parents.  Denial of a presumption of

parenthood to the Plaintiffs does not serve the best interests of the Plaintiff Children or protect,

promote, and preserve their families and numerous other similar families in Indiana.

In response to the Plaintiffs' equal protection arguments, the State Defendant explains that it has an important governmental interest in preserving the rights of biological fathers and recording and maintaining accurate records regarding the biological parentage of children born in Indiana. The State Defendant asserts that the Parenthood Statutes substantially relate to the achievement of these interests.

The State Defendant offers a litany of cases to support its position and argues that Indiana's long history of statutory and case law recognizes that an individual may become a parent only through biology or adoption. However, all of those cases precede *Baskin* and *Obergefell*. The State Defendant contends that there are only two ways by which a person becomes a parent in Indiana; therefore, the Plaintiffs must utilize the adoption process to become parents because the non-birth mother same-sex spouse cannot be biologically related to the child. Furthermore, the Parenthood Statutes do not violate the Equal Protection Clause because the statutes apply equally to all male and female spouses of birth mothers. The State Defendant argues that a husband who is not the biological father of the child should not be listed on the birth certificate because the birth mother should acknowledge that she is not married to the father of her child when she has been artificially inseminated. In such a case, the husband would have to adopt the child to be listed on the birth certificate and recognized as a parent.

Finally, the State Defendant asserts that the Parenthood Statutes do not apply at all to the creation and issuance of birth certificates. Rather, the Parenthood Statutes only apply in the adoption context. Therefore, challenging the Parenthood Statutes will not provide the relief that the Plaintiffs seek.

The Court first notes that when determining the appropriateness of summary judgment, it draws reasonable inferences in the non-moving party's favor, *Zerante*, 555 F.3d at 584, and when

doing so, the Court need not set aside common sense and logic. *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 580 n.7 (4th Cir. 2010). Moreover, the State Defendant has presented no evidence or affidavit to support its theory that a heterosexual couple who has conceived by artificial insemination would interpret the Indiana Birth Worksheet in the manner is explains.

The State Defendant's response does not account for or address the realities of the example provided by the Plaintiffs. A man and a woman are married, and the woman conceives through the aid of a third-party sperm donor. The child is not biologically related to the birth mother's husband. In completing the Indiana Birth Worksheet, the birth mother declares that she is married to the father of her child. The State of Indiana will presume parenthood of the child in the husband, and the husband is listed on the child's birth certificate despite the lack of biological or adoptive connection. This same presumption of parenthood is not afforded to the female, same-sex spouse of a birth mother who conceived through the aid of a third-party sperm donor. Thus, a husband who is not biologically related to the child born to his wife does not have to adopt the child to enjoy the status of a parent. In contrast, a female, same-sex spouse always has to adopt to enjoy the status of a parent.

The State Defendant's argument that the birth mother should acknowledge that she is not married to the father of her child when she has been artificially inseminated or else she is committing fraud is not consistent with the Indiana Birth Worksheet, Indiana law, or common sense.

The Indiana Birth Worksheet asks, "are you married to the father of your child," yet it does not define "father." This term can mean different things to different women. Common sense says that an artificially-inseminated woman married to a man who has joined in the decision for this

method of conception, and who intends to treat the child as his own, would indicate that she is married to the father of her child. Why would she indicate otherwise? The Indiana Birth Worksheet does not define "father," it does not state that the father must be the biological father of the child, and it does not indicate that it is completed under penalties of perjury. There is no warning of fraud or criminal liability. The State Defendant points to Indiana Code § 16-37-1-12 to argue that an artificially-inseminated birth mother would be committing fraud if she were to falsify statements on the Indiana Birth Worksheet. However, the Indiana Birth Worksheet does not refer to Indiana Code § 16-37-1-12, and this code provision does not relate to when an individual provides information that leads to the creation of the birth certificate. Rather, this section relates to when an individual, with intent to defraud, applies to receive a certified copy of a birth certificate.

Next, the State Defendant's argument that the Parenthood Statutes do not apply at all to the creation and issuance of birth certificates highlights the void that Indiana's statutory framework has created that leads to the State's discriminatory conduct when completing the Indiana Birth Worksheet and creating and issuing birth certificates. The Indiana Birth Worksheet was created by ISDH as part of the Indiana Birth Registration System. The Indiana Birth Worksheet asks birth mothers if they are married and then asks, "are you married to the father of your child." As the husband is presumed to be the biological father of the birth mother's child, the birth mother can affirmatively answer the question, and the husband will be listed on the birth certificate as the father of the child, even if he is not the actual biological father of the child. No such presumption, or question on the Indiana Birth Worksheet, exists for a non-birth mother same-sex spouse.

Some states have attempted to legislatively fill the statutory void similar to Indiana's statutory shortcoming. As an example, Wisconsin has a more comprehensive statutory scheme to

address parentage, artificial insemination, and birth certificates. *See* Wis. Stat. §§ 69.14, 891.40, 891.41. These statutes dictate a presumption of paternity, parentage following artificial insemination, and the contents of birth certificates. However, even with the additional statutory protections and guidance, a similar challenge to Wisconsin's statutes is pending in *Torres v. Rhoades*, No. 15-cv-288-bbc (W.D. Wis.), because these statutes allegedly do not provide for equal protection to same-sex married couples. It is the lack of clarity and comprehensiveness in Indiana's statutory framework that has led to the State's discriminatory treatment of same-sex married couples when completing the Indiana Birth Worksheet and creating and issuing birth certificates.

Concerning the State's important governmental interests, the State Defendant points to its interests in preserving the rights of biological fathers and recording and maintaining accurate records regarding the biological parentage of children. The State Defendant asserts that the Parenthood Statutes substantially relate to the achievement of these interests. The State Defendant further claims that these interests are compelling, and the Parenthood Statutes are narrowly tailored to meet these interests.

The Court is not convinced that the challenged Parenthood Statutes are substantially related or narrowly tailored to meet the stated interests of preserving the rights of biological fathers and maintaining accurate records of biological parentage. Importantly, the legitimacy statutes do not refer to biology when they define the terms "child born in wedlock" and "child born out of wedlock."

In the example provided by the Plaintiffs, the biological father will not be listed on the birth certificate because he is simply a third-party sperm donor. His paternal rights will not be preserved or recognized. Rather, the birth mother's husband will be listed on the birth certificate, and he will

enjoy the status of a parent.  In fact, it will be incorrectly recorded in the State's vital statistics records and incorrectly presumed that the husband is the biological father of the child when he actually has no biological connection to the child.

During oral argument, the State Defendant asserted that the birth mother should not name her husband as the father of the child when a third-party sperm donor is involved.  However, as noted above, common sense says that she will name her husband as the father.  Whether she names her husband as the father or states that she is not married to the father, the biological father's parental rights are not preserved and accurate records of biological parentage are not maintained. If the mother names her husband, the third-party sperm donor who is the biological father is not listed on the birth certificate.  If the mother says she is not married to the father, the third-party sperm donor who is the biological father still is not listed on the birth certificate.  In either event, the State's interests in preserving the rights of biological fathers and maintaining accurate records of biological parentage are not served.

Regarding the Supreme Court's decision in *Obergefell*, the State Defendant asserts that *Obergefell* actually decoupled marriage from parenthood because the right to marry cannot be conditioned on the capacity or commitment to procreate.  It argues that, at most, the *Obergefell* decision stands for the proposition that any benefit of marriage must now be extended to same-sex married couples on an equal basis with opposite-sex married couples.  But this is exactly what the Plaintiffs seek—the extension of a benefit of marriage on an equal basis.

When the State Defendant created and utilized the Indiana Birth Worksheet, which asks "are you married to the father of your child," the State created a benefit for married women based on their marriage to a man, which allows them to name their husband on their child's birth certificate even when the husband is not the biological father.  Because of *Baskin* and *Obergefell*,

this benefit—which is directly tied to marriage—must now be afforded to women married to women.

During oral argument, the Plaintiffs made this very point:  The State has granted mothers the power to enter a legal fiction because the mother who conceived her child with the aid of a third-party sperm donor is allowed to claim that her husband is the father of her child.  But birth mothers with same-sex spouses are not allowed to enter into the same legal fiction.  That husband has no more relationship to the child than the same-sex spouse, yet the same-sex spouse cannot be listed as a parent on the birth certificate while the man can be listed simply because the birth mother says he is married to her.

Indiana's statutory scheme leads to unequal treatment of same-sex married women who bring children into their families with the assistance of third-party sperm donors.  This unequal treatment is based on the individual's gender and sexual orientation.  The Parenthood Statutes and the State of Indiana's implementation of the statutes are not substantially related to, and do not accomplish, the State Defendant's claimed governmental objectives.  For these reasons, the Court determines that Indiana Code §§ 31-9-2-15, 31-9-2-16, and 31-14-7-1 violate the Equal Protection Clause of the Fourteenth Amendment.

## C.  Due Process

The Plaintiffs also challenge the Parenthood Statutes under the Due Process Clause of the Fourteenth Amendment, which provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law."

> The fundamental liberties protected by this Clause include most of the rights enumerated in the Bill of Rights.  See *Duncan* v. *Louisiana*, 391 U.S. 145, 147-149, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968).  In addition these liberties extend to certain personal choices central to individual dignity and autonomy, including intimate choices that define personal identity and beliefs.  See, *e.g., Eisenstadt* v. *Baird*, 405

U.S. 438, 453, 92 S. Ct. 1029, 31 L. Ed. 2d 349 (1972); *Griswold* v. *Connecticut*,
381 U.S. 479, 484-486, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965).

*Obergefell*, 135 S. Ct. at 2597–98.  "Without doubt, it denotes not merely freedom from bodily restraint but also the right of the individual . . . to marry, establish a home and bring up children."  *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).  "[F]reedom of personal choice in matters of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment."  *Moore v. East Cleveland*, 431 U.S. 494, 499 (1977).

The Plaintiffs assert their Due Process claim is reviewed under strict scrutiny because it involves a fundamental right.  Fundamental rights, although generally limited, have long been deemed to include "matters relating to marriage, family, procreation, and the right to bodily integrity," *Albright v. Oliver*, 510 U.S. 266, 272 (1994), and what has been described as "perhaps the oldest of the fundamental liberty interests recognized," a parent's liberty interest in the "care, custody, and control of their children."  *Troxel v. Granville*, 530 U.S. 57, 65 (2000).  Under strict scrutiny, "when a statutory classification significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests."  *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978).  The Plaintiffs reassert their equal protection argument to explain that the State Defendant does not have a compelling governmental interest, and the Parenthood Statutes are not narrowly tailored to serve any compelling State interests, when it denies the presumption of parenthood to the Plaintiffs.

The State Defendant responds that the Constitution provides protection to fundamental rights of parents to direct the upbringing, education, and support of their children.  However, there is no fundamental right to be a parent.  Rather, in this context, constitutionally protected fundamental rights exist only after an individual has become a parent.  Contrary to the Plaintiffs'

26

assertion, the State Defendant argues that the rational basis standard applies, not strict scrutiny. The State Defendant then explains that, under any level of constitutional review, the Parenthood Statutes satisfy constitutional standards.  It asserts that Indiana has a compelling interest in protecting the parental rights of biological parents and maintaining accurate records of biological parentage, and the Parenthood Statutes are narrowly tailored to serve these interests.

The Supreme Court long ago recognized a fundamental liberty interest "to marry, establish a home and bring up children," *Meyer*, 262 U.S. at 399, with the "freedom of personal choice in matters of marriage and family life."  *Moore*, 431 U.S. at 499.  "[O]ur laws and tradition afford constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education." *Lawrence v. Texas*, 539 U.S. 558, 574 (2003). At least one court has interpreted the Supreme Court's decision in *Troxel v. Granville* to mean that there is an established fundamental liberty interest in being a parent. *State v. Renfro*, 40 Kan. App. 2d 447, 451 (Kan. Ct. App. 2008) ("the right to be a parent is a fundamental right recognized as a liberty interest to be protected by the Due Process Clause").

The Parenthood Statutes and the State Defendant's implementation of the statutes through the Indiana Birth Worksheet significantly interferes with the Plaintiffs' exercise of the right to be a parent by denying them any opportunity for a presumption of parenthood which is offered to heterosexual couples. What Plaintiffs seek is for their families to be respected in their dignity and treated with consideration. During its discussion above concerning Equal Protection, the Court rejected as unpersuasive the State Defendant's argument that it has compelling interests that are served by the narrowly tailored Parenthood Statutes.  The Court will not repeat that analysis and discussion here.  As previously stated, the Parenthood Statutes are not narrowly tailored to meet a compelling governmental interest.  By refusing to grant the presumption of parenthood to same-

sex married women, the State Defendant violates the Plaintiffs' fundamental right to parenthood under the Due Process Clause.

**D.**   **Injunctive Relief**

The Plaintiffs request that the Court permanently enjoin Defendants from enforcing Indiana Code § 31-14-7-1 in a way that differentiates between male and female spouses of women who give birth with the aid of artificial insemination by a third-party. Additionally, the Plaintiffs request that the children born of their same-sex unions be accorded the same equal protections of children born to a man and a woman using artificial insemination; therefore, the children should not be considered children born out of wedlock under Indiana Code §§ 31-9-2-15 and -16.

> Where a permanent injunction has been requested at summary judgment, we must determine whether the plaintiff has shown: (1) success, as opposed to a likelihood of success, on the merits; (2) irreparable harm; (3) that the benefits of granting the injunction outweigh the injury to the defendant; and, (4) that the public interest will not be harmed by the relief requested.

*Collins v. Hamilton*, 349 F.3d 371, 374 (7th Cir. 2003). As discussed above, the Plaintiffs have been successful on the merits of their case under the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

Irreparable harm is presumed for some kinds of constitutional violations. *See* 11A Charles Alan Wright et al., Federal Practice & Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). This has been true in the context of violations of the First and Second Amendments. *See Christian Legal Soc'y v. Walker*, 453 F.3d 853, 867 (7th Cir. 2006) (irreparable harm is presumed in First Amendment violation); *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (irreparable harm is presumed in Second Amendment violation). The Equal Protection and Due Process Clauses of the Fourteenth Amendment similarly protect

28

intangible and unquantifiable interests. Infringement of these rights cannot be compensated by a damages award; thus, irreparable harm exists.

No injuries to the State Defendant have been shown that would result from the issuance of injunctive relief which would outweigh the benefits of the injunctive relief. The State Defendant argues that if Plaintiffs wish to create a third path to legal parenthood, whether through marriage or any other means, they should seek relief from the General Assembly—not this Court. The Supreme Court in *Obergefell* recognized that the initial inclination might be to await further legislation, litigation, and debate; however, *Obergefell* noted that the Plaintiffs' stories show the urgency of the issues they present before the Court.  This Court is hard-pressed to imagine an injury to the State Defendant if it is ordered to apply the Parenthood Statutes in a non-discriminatory way. In contrast, the injury to these Plaintiffs is unfeigned.  The public interest in serving the best interests of the child will not be harmed by injunctive relief but actually will be furthered by legally recognizing two parents for children and providing stability for children and families. Therefore, injunctive relief is an appropriate remedy.

## IV.    CONCLUSION

Given Indiana's long-articulated interest in doing what is in the best interest of the child and given that the Indiana legislature has stated the purpose of Title 31 is to protect, promote, and preserve Indiana families, there is no conceivable important governmental interest that would justify the different treatment of female spouses of artificially-inseminated birth mothers from the male spouses of artificially-inseminated birth mothers. As other district courts have noted, the holding of *Obergefell* will inevitably require "sweeping change" by extending to same-sex married couples *all* benefits afforded to opposite-sex married couples. *Campaign for Southern Equality v. Miss. Dep't of Human Servs.*, 2016 U.S. Dist. LEXIS 43897, at *35 (S.D. Miss. Mar. 31, 2016).

29

Those benefits must logically and reasonably include the recognition sought by Plaintiffs in this action.

For the reasons stated herein, the Court **GRANTS** the Tippecanoe County Defendants' Motion for Summary Judgment (Filing No. 82), and claims against each of the County Defendants are **dismissed for lack of jurisdiction**. The Court **GRANTS** the Plaintiffs' Motion for Summary Judgment against the State Defendant (Filing No. 77), and **DENIES** the State Defendant's Motion for Summary Judgment (Filing No. 84).

For the reasons set forth above, the Court **DECLARES** that Indiana Code §§ 31-9-2-15, 31-9-2-16, and 31-14-7-1 violate the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment to the United States Constitution.

The State Defendant and its officers, agents, servants, employees, and attorneys, and those acting in concert with them, including political subdivisions of the State of Indiana, are **ENJOINED** from enforcing Indiana Code §§ 31-9-2-15, 31-9-2-16, and 31-14-7-1 in a manner that prevents the presumption of parenthood to be granted to female, same-sex spouses of birth mothers.

The State Defendant and its officers, agents, servants, employees, and attorneys, and those acting in concert with them, including political subdivisions of the State of Indiana, are **ENJOINED** to recognize children born to a birth mother who is legally married to a same-sex spouse as a child born in wedlock.

The State Defendant and its officers, agents, servants, employees, and attorneys, and those acting in concert with them, including political subdivisions of the State of Indiana, are **ENJOINED** to recognize the Plaintiff Children in this matter as a child born in wedlock.

The State Defendant and its officers, agents, servants, employees, and attorneys, and those acting in concert with them, including political subdivisions of the State of Indiana, are **ENJOINED** to recognize the Plaintiff Spouses in this matter as a parent to their respective Plaintiff Child and to identify both Plaintiff Spouses as parents on their respective Plaintiff Child's birth certificate.

Final judgment will issue under separate order.  A separate Permanent Injunction will also be issued as required by Rule 65(d) of the Federal Rules of Civil Procedure.

The Plaintiffs who have prevailed in securing relief are entitled to recover their costs.

The Plaintiffs have requested an award of costs and attorneys' fees under 42 U.S.C. § 1988. The Plaintiffs are ordered to file a bill of costs and a petition for attorneys' fees within **thirty (30) days** of the date of this Order.  A **Response** may be filed within **fourteen (14) days** of such a submission.  The Plaintiffs may file a **Reply** within **seven (7) days** of such Response.

**SO ORDERED.**

Date: 6/30/2016

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Karen Celestino-Horseman
AUSTIN & JONES, PC
karen@kchorseman.com

Richard A. Mann
RICHARD A. MANN, PC
rmann@mannlaw.us

Megan L. Gehring
RICHARD A. MANN, PC
mgehring@mannlaw.us

Raymond L. Faust
SKILES DETRUDE
rfaust@skilesdetrude.com

William R. Groth
FILLENWARTH DENNERLINE GROTH &
TOWE LLP
wgroth@fdgtlaborlaw.com

Douglas Joseph Masson
HOFFMAN LUHMAN & MASSON PC
djm@hlblaw.com

J. Grant Tucker
JONES PATTERSON BOLL & TUCKER
gtucker_2004@yahoo.com

Michael James Wright
WRIGHT SHAGLEY & LOWERY, PC
mwright@wslfirm.com

Lara K. Langeneckert
OFFICE OF THE ATTORNEY GENERAL
lara.langeneckert@atg.in.gov

Thomas M. Fisher
OFFICE OF THE ATTORNEY GENERAL
tom.fisher@atg.in.gov

Nikki G. Ashmore
OFFICE OF THE ATTORNEY GENERAL
Nikki.Ashmore@atg.in.gov

Betsy M. Isenberg
OFFICE OF THE ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov

Anna M. Konradi
FAEGRE BAKER DANIELS LLP
anna.konradi@Faegrebd.com

Anne Kramer Ricchiuto
FAEGRE BAKER DANIELS LLP
anne.ricchiuto@FaegreBD.com

Anthony Scott Chinn
FAEGRE BAKER DANIELS LLP
scott.chinn@faegrebd.com